<hr/>

(C.D. 4829)

JAMES A. ELKINS, Jr., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 75–12–03129

---

(Decided December 13, 1979)

*William Pannill* for the plaintiff.

*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation, (*Susan C. Cassell* at the trial and on the brief), for the defendant.

WATSON, Judge: This action disputes the classification of three imported carvings, one from coral and two from jade. The coral carving, 5⅛ inches high, depicts a group of two ladies and a boy. One jade piece is a vase, 6¼ inches high, with carved flower decoration on the cover and body. The other jade piece, 8½ inches high, consists of four birds in an arboreal setting. The jade pieces originated from the People's Republic of China. All the items were imported from Singapore in 1974 and were classified under item 520.61[1] of the Tariff Schedules of the United States (TSUS) as other articles not specially provided for, of semiprecious stones. The coral piece was assessed with duty at the rate of 21 per centum ad valorem while the jade pieces bore the rate of 50 per centum ad valorem provided in column 2 of item 520.61.[2]

Plaintiff claims that these articles are entitled to entry free of duty as antiques made prior to 100 years before their date of entry under item 766.25 [3] or alternatively as original sculptures under item 765.15 [4] or original works of the free fine arts under item 765.25.[5]

Plaintiff's principal claim required it to prove that these articles

---

[1] Schedule 5, part 1, subpart H:
   Precious and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry:

   * * * * * * *

   Other precious and semiprecious stones, and articles not specially provided for, of such stones:

   * * * * * * *

   520. 61    Other.......................................................... 21% ad val. [and] 50% ad val.

[2] The col. 2 rates are applied in accordance with general headnote 3(e) of the TSUS, covering the products of certain Communist countries.

[3] Schedule 7, part 11, subpart B:
   Ethnographic objects made in traditional aboriginal styles and made at least 50 years prior to their date of entry; and other antiques made prior to 100 years before their date of entry; all the foregoing articles, including such articles which have been repaired or renovated without changing their original form or character:

   * * * * * * *

   766. 25    Other...........................................................    Free

[4] Schedule 7, part 11, subpart A:
   765. 15    Original sculptures and statuary (including the first 10 castings, replicas, or reproductions made from a sculptor's original work or model with or without a change in scale and whether or not the sculptor is alive at the time the castings, replicas, or reproductions are completed), all the foregoing made in any form from any material as the professional productions of sculptors only, whether in round or in relief, and whether cut, carved, or otherwise wrought by hand or cast...................................................    Free

[5] Schedule 7, part 11, subpart A:
   765.25    Original works of the free fine arts not provided for in the foregoing provisions of this part, in any media including, but not limited to, applied paper and other materials, manufactured or otherwise, such as are used on collages....    Free

were made prior to 100 years before their date of entry. This issue was tried by a straightforward confrontation of expert testimony which made the matter a classic example of the case decided on the trial judge's evaluation of the testimony given before him. In this regard the court was most favorably impressed with the authoritative testimony of plaintiff's witness, Mr. Fong Chow, associate curator of Far Eastern art at the Metropolitan Museum of Art in New York. Both his credentials and substantive analysis of the articles were superior to those of defendant's witness who was Mr. Lowell Collins, an art teacher, art gallery owner and art appraiser. Although Mr. Collins' opinions were not lightly regarded, his grounding in oriental art was less than satisfactory to the court and his overall analysis was not persuasive. Mr. Chow's opinions were based on his analysis of the style and workmanship of the pieces and were arrived at following comparison of them with pieces in books, auction catalogs, and in the extensive collection of the Metropolitan Museum of Art. He dated the coral carving as "mid-19th century," the jade bird carving as late 18th to early 19th century and the jade vase as early 19th century.

Mr. Collins claimed to have found modern tool marks on the right hand of one of the coral ladies, marks which Mr. Chow did not see and which the court could not discern. The court was persuaded that certain modern tool marks on the jade bird carving were attributable to restorers employed to grind down the sharp broken tail of one of the birds.

Despite these marks, Mr. Chow's characterization and analysis of the entire piece was distinctly more persuasive. Mr. Collins claimed to have found modern tool marks on the lid of the jade vase. Mr. Chow explained those marks as part of a triangular stylized thunder pattern and the court believed his explanation.

For the above reasons, plaintiff proved by a preponderance of the evidence that these articles were made prior to 100 years before their date of entry. It is therefore unnecessary to reach its alternate claims, and judgment will enter accordingly.